UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MAURICE HUGHES,

                        Plaintiff,

v.                                                          9:17-CV-1151
                                                            (DNH/ML)

MAHMOOD BUTT, Doctor, Broome
County Jail; BARRY HALL, Health
Administrator, Broome County Jail;
and MARK SMOLINSKY, Jail
Administrator,

                        Defendants,
_____

APPEARANCES:                                     OF COUNSEL:

MAURICE HUGHES
   Plaintiff, *Pro Se*
Collins Correctional Facility
Post Office Box 640
Collins, New York 14034

STEINBERG, SYMER & PLATT, LLP         JONATHAN E. SYMER, ESQ.
   Counsel for Defendants Butt and Hall
27 Garden Street
Poughkeepsie, New York 12601

BROOME COUNTY ATTORNEY'S OFFICE        JENNIFER L. SUWAK, ESQ.
   Counsel for Defendant Smolkinsky
60 Hawley Street, Post Office Box 1766
Binghamton, New York 13902-1766

MIROSLAV LOVRIC, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION</u>

This matter has been referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Judge.  Currently before the Court, in this civil rights action filed by Maurice Hughes ("Plaintiff") against Mahmood Butt, Doctor in the Broome County Jail, Barry Hall, Health Administrator in the Broome County Jail, and Mark Smolinsky, Jail Administrator (collectively "Defendants"), are (1) a motion for summary judgment pursuant to Fed. R. Civ. P. 56 filed by Defendant Smolinsky (Dkt. No. 55), and (2) a motion for summary judgment pursuant to Fed. R. Civ. P. 56 filed by Defendants Butt and Hall (Dkt. No. 64).  For the reasons set forth below, I recommend that Defendants' motions be granted.

## TABLE OF CONTENTS

I.     RELEVANT BACKGROUND ...................................................................................... 1

   A.   Plaintiff's Claims ............................................................................................. 1

   B.   Statement of Undisputed Material Facts .......................................................... 1

   C.   Parties' Briefing on Defendants' Motion for Summary Judgment .................. 6

II.    GOVERNING LEGAL STANDARD ...................................................................... 11

   A.   Legal Standard Governing Motion for Summary Judgment ........................... 11

   B.   Legal Standard Governing Motion to Dismiss for Failure to State a Claim ........... 14

III.   ANALYSIS ............................................................................................................ 18

   A.   Plaintiff's Failure to Oppose Defendants Butt and Hall's Motion and Failure to Oppose
        Defendants' Statements of Material Fact ...................................................... 19

   B.   Plaintiff's Medical Indifference Claim Against Defendants Butt and Hall ........... 21

   C.   Plaintiff's Retaliation Claim ......................................................................... 30

   D.   *Monell* Claim ............................................................................................... 37

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Claims

Generally, liberally construed, Plaintiff's Second Amended Complaint asserts the following two causes of action: (1) a claim of medical indifference against Defendants Butt and Hall; and (2) a claim of retaliation against Defendants.  (Dkt. No. 45.)

### B.    Statement of Undisputed Material Facts

Unless otherwise noted, the following facts were asserted and supported by Defendant Smolinsky in his Rule 7.1 Statement and not denied by Plaintiff in a Rule 7.1 Response. (*Compare* Dkt. No. 55, Attach. 6 [Def. Smolkinsky's Rule 7.1 Statement] *with* Dkt. No. 61 [Pl.'s Response], *and* Dkt. No. 63 [Pl.'s Sur-reply].)

1.    Plaintiff filed an Amended Complaint on January 31, 2018, against, *inter alia*, the following six Broome County employees: (1) Mark Smolinsky, (2) Douglas Daley, (3) Sean Pomeroy, (4) David Goble, (5) Anthony Smith, and (6) Leo Ortega.

2.    By Decision and Order dated January 22, 2018, Douglas Daley, Sean Pomeroy, David Goble, Anthony Smith, and Leo Ortega were terminated as defendants in this action.[1] Defendant Smolinsky remains the only surviving defendant in this matter employed by Broome County.

3.    Plaintiff served the Second Amended Complaint on Defendant Smolinsky on March 16, 2018.  Defendant Smolinsky filed an Answer to the Second Amended Complaint on May 15, 2018.

---

[1]    The Court notes that the Amended Complaint (Dkt. No. 17) and Decision and Order (Dkt. No. 19) referred to "C.O. Smith, C.O. Leo, Sgt. Palmeri, Sgt. Global, and Sgt. Dailey." (Dkt. No. 19, at 6.)

4.      By Decision and Order dated October 2, 2018, the Court accepted for filing (1) a claim of medical indifference against Defendants Butt and Hall, and (2) a claim of retaliation against Defendants.  The Court denied Plaintiff's motion to amend the Amended Complaint in part, to the extent that it alleged (1) a verbal harassment because such a claim is not cognizable pursuant to 42. U.S.C. § 1983, and (2) claims of freedom of religion, due process, and equal protection, because the Second Amended Complaint failed to state a claim for relief on these causes of action.

5.      During the first portion of his deposition on August 27, 2018, Plaintiff was informed by Counsel for Defendants Butt and Hall both on and off the record of the potential consequences which may result from his failure to cooperate and proceed with the deposition.

6.      Counsel for Defendant Smolinsky was unable to depose Plaintiff on August 27, 2018, other than placing brief statements on the record to establish Plaintiff's voluntary discontinuance of the deposition.

7.      On or about December 4, 2017, Sergeant Douglas Dailey had a conversation with Plaintiff in the medical unit.

Unless otherwise noted, the following facts were asserted and supported by Defendants Butt and Hall in their Rule 7.1 Statement and not denied by Plaintiff in a Rule 7.1 Response. (*Compare* Dkt. No. 64, Attach. 2 [Def. Butt and Hall's Rule 7.1 Statement] *with see generally* docket sheet.)

1.      Plaintiff was an incarcerated inmate at the Broome County Correctional Facility ("BCCF") from January 20, 2017, until May 23, 2018.

2.      Plaintiff was ultimately convicted of criminal possession of a controlled substance with intent to sell in the third degree, which is a felony.

2

3.    By Decision and Order dated March 13, 2018, the Court accepted for filing (1) a claim of medical indifference against Defendants Butt and Hall, and (2) a claim of retaliation against Defendants Butt and Hall arising from Plaintiff's September 2017, assignment to administrative segregation status, and (3) a claim of retaliation against Defendants Butt and Smolinsky arising from Plaintiff's January 2018, assignment to administrative segregation status. The Court dismissed Plaintiff's remaining claims.

4.    On March 27, 2018, Defendants Butt and Hall answered the Amended Complaint.

5.    By Decision and Order dated October 2, 2018, the Court granted in part Plaintiff's motion to file a Second Amended Complaint, which is the operative pleading.

6.    On October 5, 2018, Defendants Butt and Hall answered the Second Amended Complaint.

7.    Defendant Butt was the physician and medical director at BCCF during the relevant time period to this litigation.[2]

---

[2]    In the future, defense counsel is cautioned to comply with Local Rule 7.1(a)(3), which provides that "[e]ach fact listed shall set forth a specific citation to the record where the fact is established." *See also Robert H. Law, Inc. v. Woodbine Bus. Park, Inc.*, 13-CV-1393, 2018 WL 851382, at *5 (N.D.N.Y. Feb. 12, 2018) (Suddaby, C.J.) ("[T]he Court does not accept this as an undisputed fact . . . [because] Defendant cited generally to the entire affidavit of Derek Tarolli rather than to a specific portion of that affidavit where its assertion is supported"); *Rizzo v. Health Research, Inc.*, 12-CV-1397, 2016 WL 632546, at *2 (N.D.N.Y. Feb. 16, 2016) (Suddaby, C.J.) ("Of these 136 denials, 117 denials do not contain a specific citation to the record. Therefore, the facts 'denied' by these paragraphs will be deemed admitted."); *Benson v. Otis Elevator Co.*, 10-CV-3246, 2012 WL 4044619, at *1, n.1 (S.D.N.Y. Sept. 13, 2012) (deeming fact asserted by movant to be admitted by non-movant where non-movant supported denial "only with non-specific citations to the entire testimony of several witnesses"); *Janneh v. Regal Entm't*, 07-CV-0079, 2009 WL 2922830, at *1, n.3 (N.D.N.Y. Sept. 8, 2009) (McAvoy, J.) ("In response . . . Janneh filed a 'Statement of Material Facts Not in Dispute.' . . . The document consists of . . . a phrase at the end of the document stating simply: 'See Attached Exhibits.' Janneh's statement fails to comply with the Local Rules which Janneh has repeatedly been advised about . . . ."); *Univ. Calvary Church v. City of New York*, 96-CV-4606, 2000 WL 1538019, at *2, n.6 (S.D.N.Y. Oct. 17, 2000) ("Despite the clear language of Rule 56 requiring

8.      On January 21, 2017, Plaintiff was a forty-seven-year-old male.  On February 21, 2014, Plaintiff was diagnosed as a diabetic and was prescribed insulin for treatment.

9.      Plaintiff's sole allegation of medical indifference against Defendant Butt and Defendant Hall concerning the administration of insulin from January 20, 2017, to May 23, 2018, is that if his blood sugar level was below 150 mg/dl, then Plaintiff received no units of insulin at the time of the measurement.

10.     All orders for the administration of insulin while Plaintiff was incarcerated from January 20, 2017, to May 23, 2018, were given by Defendant Butt, which set forth a titrated scale.  The scale included escalating units of insulin when Plaintiff's measured blood sugar level was above 149 mg/dl and directed no units of insulin for blood sugar levels below 149 mg/dl.

11.     While incarcerated from January 20, 2017, to May 23, 2018, Plaintiff's blood sugar values were assessed before each meal (four times each day) and insulin was administered following each measured blood sugar value over 149 mg/dl.

12.     While incarcerated from January 20, 2017, to May 23, 2018, Plaintiff was administered Lantus at the hour of sleep to further manage his diabetic mellitus.

13.     Defendant Hall did not order the sliding scale of insulin.

14.     Plaintiff alleges that while incarcerated from January 20, 2017, to May 23, 2018, he was not given a cane or brace to treat his complaints of lower back pain.

15.     From January 22, 2017, through March 2018, Defendant Butt conducted at least eight separate physical examinations of Plaintiff's lower back and extremities.

---

specificity, Plaintiffs rarely offers an exact cite in support of their version of the facts. . . . [A] vague cite to all of the exhibits is simply unacceptable.")

16.     During Defendant Butt's physical examinations of Plaintiff's lower back and extremities, he observed no signs of lumbosacral impairment including no spasm, sacroiliitis or radicular findings to his lower extremities, which in Defendant Butt's opinion would necessitate a brace or cane.

17.     In addition, Defendant Butt reviewed the following medical records: (1) MRIs obtained before Plaintiff was incarcerated, which reflected mild degenerative changes, and (2) x-rays obtained on September 19, 2017, which showed no evidence of an acute or chronic lumbosacral spine issue or significant degenerative change.  In Defendant Butt's opinion, the mild degenerative changes would not be symptomatically improved with a cane or brace.

18.     Defendant Butt ordered—and Plaintiff received—analgesics and neurotonin, on an as needed basis.

19.     Plaintiff was examined on or about April 6, 2018, by the Broome County Health Department.  The medical records from that examination do not indicate that testing for hepatitis was conducted.

20.     At BCCF, routine blood testing for blood sugar evaluations or complete blood counts for diabetes management do not include testing for hepatitis C.

21.     Plaintiff did not request in writing that Defendant Butt test him for hepatitis C.

22.     In Defendant Butt's opinion, Plaintiff did not demonstrate clinical findings of active hepatitis C during his incarceration from January 20, 2017, to May 23, 2018.

23.     At various times in December 2017, and January 2018, Plaintiff was maintained in the medical cells (A-Pod) for the purposes of monitoring his blood sugar values and food intake to stabilize his fluctuating, poorly-controlled diabetes mellitus.

### C.    Parties' Briefing on Defendants' Motion for Summary Judgment

#### 1.    Defendant Smolinsky's Memorandum of Law-in-Chief

Generally, in support of his motion to for summary judgment, Defendant Smolinsky asserts four arguments.  (*See generally* Dkt. No. 55, Attach. 1 [Def. Smolinsky's Mem. of Law].)

First, Defendant Smolinsky argues that Plaintiff was not denied his due process rights based on the assignment to administrative segregation.  (*Id.*)  More specifically, Defendant Smolinsky argues that (1) a threat of administrative segregation does not rise to the level of a denied liberty interest, (2) one date of solitary confinement within the vicinity of other inmates who have been accused of committing heinous crimes, absent evidence that their presence was an atypical or significant burden is not a denial of due process, and (3) the "remaining dates of September 22, 2017[,] and January 20, 2018[,]" it was "well documented that Plaintiff had an extended stay in the medical unit" and Defendant Smolinsky should not be liable because (a) "[a]n extended stay in the medical unit is entirely mandated by medical professionals," which Defendant Smolinsky is not, and (b) Plaintiff has not offered any evidence that the confinement in connection with those dates was atypical or significant.  (*Id.*)

Second, Defendant Smolinsky argues that there is no evidence that retaliation was a substantial or motivating factor in his actions.  (*Id.*)  More specifically, Defendant Smolinsky argues that (1) he did not have any role in Plaintiff's medical treatment inside of the medical unit to address his medical needs, (2) threats of solitary confinement are insufficient to raise a triable issue of fact as to any "special circumstance."  (*Id.*)  In addition, Defendant Smolinsky argues that despite Plaintiff's allegation that he was "[c]o-signing the Order of Admin. Segregation" (Dkt. No. 45, at 3), that "[n]o such Order of Administrative Segregation exists and is not a form utilized by the Broome County Sheriff's Office."  (Dkt. No. 55, Attach. 1, at 7.)

Third, Defendant Smolinsky argues that he is entitled to qualified immunity because to the extent that he had any involvement, it was objectively reasonable for him to place Plaintiff in the medical unit at the direction of a medical professional.  (*See generally* Dkt. No. 55, Attach. 1.)

Fourth, Defendant Smolinsky argues that Plaintiff failed to show that the alleged violations are pursuant to a Broome County custom, policy, or practice and thus, claims against him in his official capacity should be dismissed.  (*Id.*)

### 2.    Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendant Smolinsky's motion for summary judgment, Plaintiff asserts five arguments.  (*See generally* Dkt. No. 61, Attach. 2 [Pl.'s Opp'n Mem. of Law].)

First, Plaintiff argues that he was denied medical care in the following respects: (1) improper amounts of insulin were administered, (2) wrongful diagnosis of a serious shoulder injury, and (3) denial of treatment for hepatitis C.  (*Id.*)  More specifically, Plaintiff argues that he was prescribed a cane and back brace but those orders were "totally ignored for over 16 months, which caused the plaintiff serious discomfort."  (*Id.*)

Second, Plaintiff argues that his deposition was discontinued due to "serious medical need[s]."  (*Id.*)

Third, Plaintiff argues that Defendant Smolinsky "allow[ed] [him] to be Admin. Segregated, for having a serious ailment, which was uncontrolled by the medical staff/Dr. Butt, Barry Hall, and the Segregation was okayed by the Jail Administrator, Mark Smolinsky."  (*Id.*) More specifically, Plaintiff argues that "[t]he extended stays were due to the uncontrolled 'Blood Sugars', because the physician, Dr. Butt, and Health Administrator, Barry Hall, disregarded the

scale that, the Plaintiff's 'Endocrinologist', had prescribed for the particular type of diabetes, that the Plaintiff was suffereing (sic) from."  (*Id.*)

Fourth, Plaintiff argues that Defendant Smolinsky is not entitled to qualified immunity because "[h]e is not a Government Official."  (Dkt. No. 61, at 2.)

Fifth, Plaintiff argues that Defendant Smolinsky is perpetuating "yet another lie . . . to try to twart (sic) the Plaintiff's efforts for real and true justice for the denial of rights guaranteed [] by the Constitution of the United States of America."  (Dkt. No. 61 at 2.)  More specifically, Plaintiff argues that the BCCF Administrative Segregation Order form exists and he submitted copies reflecting his segregation on April 23, 2018, and September 22, 2017.  (Dkt. No. 61 at 3; Dkt. No. 61, Attach. 1 at 7.)

### 3.    Defendant Smolinsky's Reply Memorandum of Law

Generally, in his reply, Defendant Smolinsky asserts three arguments.  (Dkt. No. 62, Attach. 2 [Def. Smolinsky's Reply Mem. of Law].)

First, Defendant Smolinsky argues that Plaintiff failed to provide a response to Defendant Smolinsky's statement of material facts and as a result, those facts should be deemed admitted. (*Id.*)  More specifically, Defendant Smolinsky argues that Plaintiff's "Statement of Facts that Are in Dispute" does not conform with the requirements in Local Rule 7.1(a)(3), including the requirement that the nonmovant admit or deny each assertion and provide a citation in the record to support each denial.  (*Id.*)  In addition, Defendant Smolinsky argues that Plaintiff "failed to present anything more than mere allegations, other than the fact that the Broome County Sheriff's office does retain Administrative Segregation Orders." (*Id*. at 3.)

Second, Defendant Smolinsky argues that no genuine issue of material fact precludes summary judgment in his favor.  (*See generally* Dkt. No. 62, Attach. 2.)  More specifically, Defendant Smolinsky argues that, (1) Plaintiff was moved from B-Pod to A-Pod in December

2017, for convenience due to A-Pod's geographic proximity to the medical unit, where Plaintiff frequently required urgent treatment, and thus there is no evidence that Defendant Smolinsky retaliated against Plaintiff in violation of Plaintiff's constitutional rights for this transfer, and (2) Plaintiff presented no evidence that Defendant Smolinsky had any personal involvement in the transfer of Plaintiff to the A-Pod and even though the Administrative Segregation Order exists, Defendant Smolinsky did not sign it.  (*Id.*)

Third, Defendant Smolinsky argues that he is entitled to judgment on the law because he did not violate the constitutional rights of Plaintiff.  (*Id.*)  More specifically, Defendant Smolinsky argues that Plaintiff does not have any due process right to be housed in one housing unit versus another for non-disciplinary purposes, absent any atypical or significant circumstances which are not present here.

### 4.    Plaintiff's Sur-Reply[3]

Generally, in his sur-reply, Plaintiff argues that (1) Defendant Smolinsky and his defense counsel committed perjury when they swore that Administrative Orders for segregation do not exist, (2) A-Pod is not more conveniently located in relation to the medical unit than B-Pod and Defendant Smolinsky's non-retaliatory justification for the transfer was mere pretext, (3) when Plaintiff was transferred to A-Pod it was "Admin-Seg . . . for individuals who have signed in [for] protection, and others, who were in fear of their physical well being," (4) Plaintiff did not receive proper medical treatment for his hepatitis C diagnosis while incarcerated at BCCF, and

---

[3]    The Court notes that pursuant to Local Rule 7.1(b)(1), a sur-reply is not permitted in opposition to a motion for summary judgment.  However, given the Plaintiff's *pro se* status and the "special solicitude" granted to *pro se* litigants, the Court considered the arguments contained in Plaintiff's sur-reply.

(5) Plaintiff did not receive proper medical treatment to address his diabetes while incarcerated at BCCF. (Dkt. No. 63 [Pl.'s Sur-Reply].)

### 5. Defendants Butt and Hall's Memorandum of Law-in-Chief

Generally, in support of their motion to for summary judgment, Defendants Butt and Hall assert two arguments. (*See generally* Dkt. No. 64 Attach. 3 [Defs. Butt and Hall's Mem. of Law].)

First, Defendants Butt and Hall argue that Plaintiff failed to establish that they were deliberately indifferent to his serious medical needs. (*Id*.) More specifically, Defendants Butt and Hall argue that (1) the regimen of insulin that was utilized (i.e., withholding insulin when Plaintiff's measured blood sugar value was below 149 mg/dl) was in accord with accepted medical practice and was not a substantial cause of harm or injury to Plaintiff, (2) Plaintiff failed to submit any evidence that he had a serious medical condition impacting his lower back and based on the evaluations and physical examinations, Defendant Butt opined that neither a cane nor a brace were medically necessary or in accord with accepted medical practice, and (3) Plaintiff failed to sufficiently raise a claim of failure to diagnose or treat his hepatitis C and, in any event, Plaintiff's claim regarding hepatitis C fails because (a) Plaintiff never made a written request for hepatitis C testing or treatment during the entirety of his incarceration at BCCF, (b) the Broome County Department of Health records refute Plaintiff's assertion that hepatitis C was tested for or that the testing was positive, (c) hepatitis C information is supplied to all inmates upon arrival at the jail and Plaintiff did not request testing, (d) Defendant Butt denies that Plaintiff made any verbal request for hepatitis testing, and (e) there is no evidence that Plaintiff sustained any causally related harm because of non-treatment for asymptomatic hepatitis C and Plaintiff demonstrated no clinical findings of active hepatitis C. (*Id.*)

Second, Defendants Butt and Hall argue that they are entitled to summary judgment on the claims of retaliatory confinement in administrative segregation. (*Id.*) More specifically, Defendant Butt and Hall adopt the arguments set forth by Defendant Smolinsky demonstrating that Plaintiff's claim of retaliation is unsubstantiated and unfounded. (*Id.*) In addition, Defendants Butt and Hall argue that it was requested by medical staff that Plaintiff be housed in the medical unit because of his significantly fluctuating blood sugar values and the need to address Plaintiff's diabetes mellitus. (*Id.*)

### 6.    Plaintiff's Failure to Respond to Defendants Butt and Hall's Motion

Plaintiff's response to Defendants Butt and Hall's motion for summary judgment was due on March 26, 2019. (Text Re-Notice dated March 1, 2019; Dkt. No. 66.) Based on a letter motion that the Court construed as a request for an extension of the response deadline, the Court granted Plaintiff's request and extended the deadline to respond to Defendants Butt and Hall's motion to April 30, 2019. (Dkt. No. 68.) Based on another request, the Court again extended the deadline for Plaintiff to respond to Defendants Butt and Hall's motion to May 31, 2019. (Dkt. No. 71.) After the expiration of the deadline of May 31, 2019, the Court *sua sponte* granted Plaintiff an additional extension and set the deadline for Plaintiff to file a response to Defendants Butt and Hall's motion to July 5, 2019. (Dkt. No. 73.) To date, Plaintiff has not filed a response to Defendants Butt and Hall's motion for summary judgment. (*See generally* docket sheet.)

## II.    GOVERNING LEGAL STANDARD

### A.    Legal Standard Governing Motion for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence

is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[4]  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(a),(c),(e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that non-movant is proceeding *pro se*.[5]  (This is because the Court extends special solicitude to the *pro se* litigant largely by ensuring that he or she has received notice of the consequences of failing to

---

[4]     As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted].  As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

[5]     *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 2009) (Suddaby, J.) (citing cases).

properly respond to the motion for summary judgment.)[6]  As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigants must obey a district court's procedural rules.[7]

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3). What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement[8]–even when the non-movant was proceeding *pro se*.[9]

---

[6]     *Cusamano*, 604 F. Supp. 2d at 426 & n.3 (citing cases).

[7]     *Cusamano*, 604 F. Supp. 2d at 426-27 & n.4 (citing cases).

[8]     Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

[9]     *Cusamano*, 604 F. Supp. 2d at 427 & n.6 (citing cases); *see also Prestopnik v. Whelan*, 253 F. Supp. 2d 369, 371 (N.D.N.Y. 2003) (Hurd, J.) (holding that the Court is not required to "perform an independent review of the record to find proof of a factual dispute.").

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[10]  Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden.  *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

## B.    Legal Standard Governing Motion to Dismiss for Failure to State a Claim

"To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)."  *Hughes v. Butt*, 06-CV-1462, 2009 WL 3122952, at *5 (N.D.N.Y. Sept. 28, 2009) (McAvoy, J.) (accepting and adopting the recommendation of U.S. Magistrate Judge Lowe to grant summary judgment in favor of defendants where Plaintiff alleged he was

---

[10]    *See*, *e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

denied medical care, discriminated against, subjected to excessive force, and wrongfully detained in the Special Housing Unit at the Broome County Jail).  As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon a motion for summary judgment." *Schwartz v. Compagnie Gen. Transatlantique*, 405 F.2d 270, 273-74 (2d Cir. 1968); *accord Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties.").  Moreover, even where a defendant has not advanced such a failure-to-state-a-claim argument on a motion for summary judgment, a district court may, *sua sponte*, address whether a *pro se* prisoner has failed to state a claim upon which relief may be granted.[11]

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 211, nn.15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a

---

[11]     The authority to conduct this *sua sponte* analysis is derived from two sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis* ] at any time if the court determines that . . . the action . . . is frivolous or malicious[,] . . . fails to state a claim on which relief may be granted[,] . . . or . . . seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. § 1915A(b), which provides that, "[o]n review, the court shall . . . dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted . . . ."  *Hughes v. Butt*, 2009 WL 3122952, at *5 n.6.

pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added].  In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case).  On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).[1]

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court.  *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases).  For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits."  2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).  For example, numerous Supreme Court and Second Circuit decisions exist holding

---

[1]      *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (McAvoy, C.J.).

that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not

show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 [internal quotation marks and citations omitted].  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.  Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice.  *Iqbal*, 129 S. Ct. at 1949  (internal citations and alterations omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

However, complaints by *pro se* parties are accorded more deference than those filed by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 127 (2007).  As such, *Twombly* and *Iqbal* notwithstanding, this Court must continue to "construe [a complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." *Weixel v. Bd. of Educ.*, 287 F.3d 139, 146 (2d Cir. 2002).

## III.    ANALYSIS

After carefully considering the matter, the Court grants Defendants' motions for summary judgment for the reasons stated in their memoranda of law.  (Dkt. No. 55, Attach. 1; Dkt. No. 62, Attach. 2; Dkt. No. 64, Attach. 3.)  To those reasons, the Court adds the following analysis, which is intended to supplement but not supplant Defendants' reasons.

**A.    Plaintiff's Failure to Oppose Defendants Butt and Hall's Motion and Failure to Oppose Defendants' Statements of Material Fact**

Before turning to the merits of Defendants' motions, a threshold issue to be addressed is the legal significance of Plaintiff's failure to oppose Defendants Butt and Hall's motion, and specifically whether that failure should be construed as a consent to the dismissal of his Amended Complaint.

Pursuant to Local Rule 7.1(b)(3), by failing to oppose Defendants Butt and Hall's motion, Plaintiff has effectively consented to the granting of the relief sought. That rule provides as follows:

> Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown.

N.D.N.Y. L.R. 7.1(b)(3); *see also Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014) (holding that the district courts may enter summary judgment in favor of the moving party where the non-moving party fails to respond in opposition, but not without first "ensur[ing] that each statement of material fact is support by record evidence sufficient to satisfy the movant's burden of production" and "determin[ing] whether the legal theory of the motion is sound").

In this case, Plaintiff has not responded to Defendants Butt and Hall's motion.  The motion was properly filed by Defendants Butt and Hall, and Defendants Butt and Hall, through their motion, have met their burden of demonstrating entitlement to the relief requested.  With respect to the question of whether Defendants Butt and Hall have met his burden, I note that the "burden of persuasion is lightened such that, in order to succeed, his motion need only be 'facially meritorious.'"  *See Rodriguez v. Goord*, 04-CV-0358, 2007 WL 4246443, at *1 (N.D.N.Y. Nov. 27, 2007) (Scullin, J., adopting Report-Recommendation on clear error review.)

(finding that determination of whether a movant has satisfied its burden to demonstrate entitlement to a dismissal under Local Rule 7.1(b)(3) "is a more limited endeavor than a review of a contested motion to dismiss" (citing cases)).

Because Defendants Butt and Hall have accurately cited both proper legal authority and evidence in the record supporting the grounds on which their motion is based, and Plaintiff has failed to respond in opposition to the motion to dismiss, I find that Defendants Butt and Hall's motion is facially meritorious. *Jackson*, 766 F.3d at 194. Accordingly, I recommend that the Court grant Defendants Butt and Hall's motion on this basis.

It should also be noted that there are additional consequences flowing from Plaintiff's failure to file an opposition to Defendants' Local Rule 7.1(a)(3) Statement of Material Facts. Local Rule 7.1 provides, in relevant part, that "[t]he Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." N.D.N.Y. L.R. 7.1(a)(3) (emphasis in original). Courts in this district have routinely enforced this rule in cases where a non-movant has failed to properly respond. *See, e.g.*, *Elgamil v. Syracuse Univ.*, 99-CV-0611, 2000 WL 1264122, at *1 (N.D.N.Y. Aug. 22, 2010) (McCurn, J.) (listing cases). Undeniably, *pro se* litigants are entitled to some measure of forbearance when defending against summary judgment motions. *Jemzura v. Public Serv. Comm'n*, 961 F. Supp. 406, 415 (N.D.N.Y. 1997) (McAvoy, J.). The deference owed to *pro se* litigants, however, does not extend to relieving them of the ramifications associated with the failure to comply with the court's local rules. *Robinson v. Delgado*, 96-CV-0169, 1998 WL 278264, at *2 (N.D.N.Y. May 22, 1998) (Pooler, J., adopting Report-Recommendation on clear error review.). Stated differently, "a pro se litigant is not relieved of his duty to meet the

requirements necessary to defeat a motion for summary judgment." *Latouche v. Tompkins*, 09-CV-0308, 2011 WL 1103045, at *1 (N.D.N.Y. Mar. 23, 2011) (Mordue, J.).

Here, because Plaintiff was warned of the consequences of failing to properly respond to Defendants' Local Rule 7.1 Statements (Dkt. No. 56 at 2; Dkt. No. 66 at 2), and he has failed to do so, I recommend that the Court deem the facts contained in Defendants' Local Rule 7.1(a)(3) Statements as having been admitted to the extent they are supported by accurate record citations. *See*, *e.g.*, *Latouche*, 2011 WL 1103045, at *1; *see also Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir.1996). As to any facts not contained in Defendants' Local Rule 7.1(a)(3) Statements, in light of the procedural posture of this case, the Court is "required to resolve all ambiguities and draw all permissible factual inferences" in favor of Plaintiff. *Terry*, 336 F.3d at 137.

### B. Plaintiff's Medical Indifference Claim Against Defendants Butt and Hall[12]

Pretrial detainees "receive protection against mistreatment at the hands of prison officials under . . . the Due Process Clause of the Fourteenth Amendment" rather than under the cruel and

---

[12]    "Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 [2d Cir. 1991]; *McKinnon v. Patterson*, 568 F.2d 930, 934 [2d Cir. 1977]). As the Supreme Court has noted, a defendant may only be held accountable for his actions pursuant to 42 U.S.C. § 1983. *See Ashcroft v. Iqbal*, 556 U.S. 622, 683 (2009) ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law." *Hendrickson v. U.S. Attorney Gen.*, 91-CV-8135, 1994 WL 23069, at *3 (S.D.N.Y. Jan. 24, 1994). There is no evidence before the Court that Defendant Hall had any personal involvement in Plaintiff's medical indifference claims. *See Gillard v. Rosati*, 08-CV-1104, 2011 WL 4402131, at *7 (N.D.N.Y. Aug, 22, 2011) (Peebles, M.J.) (recommending dismissal of the plaintiff's claims against a nurse administrator at a correctional facility that was not personally involved in any alleged unconstitutional conduct and was named as a defendant solely due to her place in the prison medical staff chain of command), *report and recommendation adopted*, 2011 WL 4344061 (Sept. 14, 2011) (Kahn, J.). While Defendant Hall allegedly responded to Plaintiff's grievance, there is no evidence that Defendant

unusual punishment clause of the Eighth Amendment. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d

Cir. 2017). Unlike a convicted prisoner, a pretrial detainee may not be punished in any manner,

"neither cruelly and unusually nor otherwise." *Darnell*, 849 F.3d at 29.

A plaintiff claiming the denial of proper and adequate medical care must satisfy a two-

pronged test. "The first element is objective and measures the severity of the deprivation, while

the second element is subjective and ensures that the defendant acted with a sufficiently culpable

state of mind." *Wright v. Genovese*, 694 F. Supp. 2d 137, 153 (N.D.N.Y. 2010) (Kahn, J.)

"In order to meet the objective requirement, the alleged deprivation of adequate medical

care must be 'sufficiently serious.'" *Wright*, 694 F. Supp. 2d at 153-54. "Only deprivations

denying the minimal civilized measure of life's necessities are sufficiently grave to form the

basis of an Eighth Amendment violation." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir.

2006). The objective requirement has two components: (1) "whether the prisoner was actually

deprived of medical care"; and (2) whether "the inadequacy in medical care is sufficiently

serious." *Id.* at 279-80.

To determine whether the inadequacy in medical care is sufficiently serious, a court must

"examine how the offending conduct is inadequate and what harm, if any, the inadequacy has

caused or will likely cause the prisoner." *Id.* "[A] sufficiently serious condition is 'a condition

of urgency, one that may produce death, degeneration or extreme pain.'" *Green v. Misa*, 09-CV-

---

Hall explained or defended Plaintiff's treatment. (Dkt. No. 45 at 3; Dkt. No. 64, Attach. 10 at
59-60.) *See also Gillard*, 2011 WL 4402131, at *8 (citing *Woods v. Goord,* 01-CV-3255, 2002
WL 731691, at *7-9 (S.D.N.Y. Apr. 23, 2002) (holding that personal liability may lie where a
"supervisor's 'involvement went beyond merely the receipt of complaint letters,' to 'responding,
explaining the treatment and defending the institution.'")); *see also Rashid v. Hussain*, 95-CV-
0676, 1997 WL 642549, at *3 (N.D.N.Y. Oct. 15, 1997) (Pooler, J.) (holding that "the mere fact
that [the defendant] responded to a letter complaining about [the plaintiff]'s dental treatment
would not, by itself, subject [the defendant] to liability."). As a result, I recommend dismissal of
the medical indifference claims against Defendant Hall.

1106, 2013 WL 2458775, at *7 (W.D.N.Y. June 6, 2013).  In addition, a serious medical

condition may exist where "the failure to treat a prisoner's condition could result in further

significant injury or the unnecessary and wanton infliction of pain."  *Harrison v. Barkley*, 219

F.3d 132, 136 (2d Cir. 2000).  "The Second Circuit recognizes several factors relevant to the

seriousness of a medical condition including: (1) the existence of an injury that a reasonable

doctor or patient would find important or worthy of comment or treatment; (2) the presence of a

medical condition that significantly affects a person's daily activities; and (3) the existence of

chronic and substantial pain."  *Green*, 2013 WL 2458775, at *7.  "Because the objective

component of an Eighth Amendment claim is . . . necessarily contextual and fact-specific, the

serious medical need inquiry must be tailored to the specific circumstances of each case."  *Smith

v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003).

### 1.    Insulin Regimen

There is no issue of fact that Defendant Butt ordered, and Plaintiff was administered,

insulin on a sliding scale, whereby Plaintiff received escalating units of insulin when his

measured blood sugar level was above 149 mg/dl and directed no units of insulin for blood sugar

levels below 149 mg/dl.

"To the extent that [P]laintiff believed that different treatment would remedy his diabetes

symptoms, this belief does not amount to inadequate medical care as [P]laintiff's concerns

constitute nothing more than a mere disagreement with [Defendant Butt]'s treatment plan, which

is not actionable under the Eighth Amendment."  *Green v. Venettozzi*, 14-CV-1215, 2018 WL

7917917, at *19 (N.D.N.Y. Nov. 21, 2018) (Hummel, M.J.) (citing *Randle v. Alexander*, 960 F.

Supp. 2d 457, 481 (S.D.N.Y. 2013) ("Indeed, '[a]n inmate's disagreement with his treatment or a

difference of opinion over the type or course of treatment [does] not support a claim of cruel and

unusual punishment.'")), *report and recommendation adopted*, 2019 WL 624922 (Feb. 14, 2019) (Sannes, J.); *see also Scott v. Laux*, 07-CV-0936, 2008 WL 4371778, at *4 (N.D.N.Y. Sept. 18, 2008) (Sharpe, J.) ("[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a § 1983 claim."). As a result, Plaintiff has failed to establish that Defendant Butt deprived him of adequate medical care under the objective prong of the deliberate indifference analysis.

In addition, and in the alternative,[13] Plaintiff also failed to establish the subjective prong of the deliberate indifference analysis because he did not present any evidence that Defendant Butt knew of and disregarded an "excessive risk" to his health. *Venettozzi*, 2018 WL 7917917, at *20. The record demonstrates that Defendant Butt utilized the sliding scale in accord with accepted medical practice. (Dkt. No. 64, Attach. 13 at 3.) Based on his assessment of Plaintiff's medical records and that blood sugar tests conducted four times daily, Defendant Butt determined that a combination of insulin on sliding scale during the day and Lantus at night was the appropriate plan to treat Plaintiff's diabetes. (*Id.*) "Inmates do not have a constitutional right to the treatment of their choice." *Venettozzi*, 2018 WL 7917917, at *20 (citing *Wright v. Genovese*, 694 F. Supp. 2d 137, 155 (N.D.N.Y. 2010) (Baxter, M.J.) ("Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm."); *Daniels v. Williams*, 474 U.S. 327, 335-36 (1986) (concluding that negligence is not a cognizable claim under 42 U.S.C. § 1983); *Kucharczyk v. Westchester Cnty.*, 95 F. Supp. 3d 529, 537 (S.D.N.Y. 2015) ("[M]ere negligence is not enough to state a claim for deliberate indifference.")).

---

[13]     *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (holding that a plaintiff must demonstrate both the objective and subjective prongs to establish a deliberate indifference claim).

As a result, Plaintiff has failed to establish that Defendants Butt or Hall were deliberately indifferent to a serious medical condition, and it is recommended that Defendants Butt and Hall's motion on this ground be granted.

### 2.    Failure to Prescribe a Cane and Back Brace

Based on Defendant Butt's physical examinations of Plaintiff's lower back and extremities and his review of objective medical evidence including MRIs and X-rays, he determined that Plaintiff would not be symptomatically improved with a cane or brace.  (Dkt. No. 64, Attach. 13 at 5-6.)  As a result, Defendant Butt was not deliberately indifferent to Plaintiff's medical needs.  *See also Abreu v. Farley*, 11-CV-6251, 2019 WL 1230778, at *10 (W.D.N.Y. Mar. 15, 2019) (granting summary judgment of a medical indifference claim where the plaintiff had been prescribed a back brace at another correctional facility but the doctor defendant at Five Points correctional facility removed the back brace and discontinued some of the plaintiff's pain medications based on his medical examination of the plaintiff and objective medical evidence, such as x-rays); *Lewis v. Alves*, 01-CV-0640A, 2004 WL 941532, at *6 (W.D.N.Y. Mar. 22, 2004) (holding that the defendant's decision to deny drug treatment while the plaintiff completed "an alcohol and drug treatment program was based upon objective medical criteria and the exercise of [the defendant's] medical judgment," and thus, could not support a medical indifference claim); *Munlyn v. Pietrie*, 13-CV-6170, 2014 WL 3695488, at *6 (W.D.N.Y. July 24, 2014) (stating that the plaintiff's allegations only reflect his "disagreement with [the medical staff's] evaluation and assessment of his medical circumstances" where he claimed that they "did not believe he had any pain, or disputed the severity of the pain," and then they "refused [the p]laintiff's requests to see the doctor," removed his neck brace and walking cane, disapproved physical therapy, and told him "to stop lying.").

Plaintiff's contentions merely challenge Defendant Butt's medical judgment and he has submitted no medical evidence demonstrating that a back brace or cane should have been used as a form of treatment. *Abreu*, 2019 WL 1230778, at *10 (citing *Evan v. Manos*, 336 F. Supp. 2d 255, 263 (W.D.N.Y. 2004) (stating that the plaintiff's opinion that the defendant "should have prescribed a back brace is also inadequate to give rise to any issue of fact about whether his constitutional rights were violated," and noting that "[t]here is no medical evidence that a back brace was medically called for or that it would have relieved plaintiff's alleged pain.")). "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). "Disagreement over treatment relates to an issue of medical judgment and at worst, amounts to medical malpractice, not a constitutional violation." *Tavares v. New York City Belleview Hosp.*, 13-CV-3148, 2015 WL 7736544, at *5 (S.D.N.Y. Nov. 30, 2015) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

In addition, the Court notes that based on Plaintiff's own description, the pain associated with his lower back complaints is not the kind of "extreme pain" that renders a medical need sufficiently serious. (Dkt. No. 61, Attach. 2 at 2 ["I was in Broome County Jail, and had a prescription for a cane and a backbrace, and the order was totally ignored for over 16 months, which cause the plaintiff serious discomfort."].) *See also Barrett v. Livingston Cnty, New York*, 14-CV-6593, 2019 WL 1083027, at *7 (W.D.N.Y. Mar. 7, 2019) (citing *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (stating that the medical condition must produce death, degeneration, or extreme pain"); *see also Steele v. Ayotte*, 17-CV-1370, 2018 WL 731796, at *12 (D. Conn. Feb. 6, 2018) ("Complaints of discomfort do not rise to the level of a serious medical need."); *Salaam v. Adams*, 03-CV-0517, 2006 WL 2827687, at *10 (N.D.N.Y. Sept. 29, 2006)

(Kahn, J.) (medical condition was not serious where, among other things, the plaintiff's complaints "to medical staff were sporadic and moderate or mild in nature (i.e., not characterized by Plaintiff as 'severe,' 'extreme,' 'agonizing,' 'excruciating,' etc.)"); *Perry v. Tichler*, 06-CV-136, 2009 WL 1076205, at *4 (N.D.N.Y. Apr. 21, 2009) (Mordue, C.J.) (stating that knee injuries like a torn collateral ligament, "while uncomfortable and painful, do not constitute serious medical conditions.")) (holding that the plaintiff's description of "discomfort" was not the sort of paint that renders a medical need sufficiently serious).

As a result, Plaintiff has failed to establish that Defendants Butt or Hall were deliberately indifferent to a serious medical condition, and it is recommended that Defendants Butt and Hall's motion on this ground be granted.

### 3.    Hepatitis C[14]

In his verified amended Complaint, Plaintiff alleged that when he was "sent to" Elmira Correctional Facility, he was diagnosed with hepatitis C.  (Dkt. No. 45, at 6.)  Plaintiff alleged that Defendant Butt should have been aware that Plaintiff had hepatitis C because his blood was taken "enough times to know that [a] serious disease existed in [his] body" and that the "[m]edical unit . . . totally ignored the advice of the Board [o]f Health, personell (sic), who told the facility to check my blood."  (*Id.* at 6-7.)

Construing these allegations liberally, broadly, and interpreting them to raise the strongest arguments that they suggest, I find that they sufficiently raise a claim of medical indifference with regard to Defendant Butt's alleged failure to diagnose Plaintiff after the Board

---

[14]    "Hepatitis C is a blood-borne virus that infects the liver, causing jaundice, nausea, abdominal pain, joint pain, fever, and fatigue.  Individuals with chronic hepatitis C are at increased risk for cancer, cirrhosis, and liver failure."  *Bernier v. Koenigsmann*, 17-CV-0254, 2017 WL 8230891, at *1 n.2 (N.D.N.Y. Nov. 22, 2017) (Baxter, M.J.), *report and recommendation adopted*, 2018 WL 1355259 (Mar. 15, 2018) (Hurd, J.).

of Health advised him to check Plaintiff's blood. As a result, I recommend that Defendants Butt and Hall's motion to dismiss this cause of action for failure to state a claim be denied.

Turning to the record currently before the Court, I find that no genuine dispute of a material fact exists as to whether Defendant Butt was deliberately indifferent to Plaintiff's hepatitis C medical condition.

Plaintiff testified that in April of 2017,[15] after blood testing by the Department of Health, he was verbally informed that he tested positive for hepatitis C. (Dkt. No. 64, Attach. 10 at 44-50.) Plaintiff testified that after being informed that he tested positive for hepatitis C, on two occasions he orally requested that Defendant Butt treat him for hepatitis C. (*Id*. at 51-52.)

Plaintiff's deposition testimony is in direct contradiction of the verified Amended Complaint, which alleged that Plaintiff had "newly di[s]covered, that [he] [has] (Hepatitis C), when [he] was sent to Elmira Corr. Facility, after submitting to a blood test." (Dkt. No. 45 at 6.)

It is well established that credibility issues, which are questions of fact for resolution by a jury, are inappropriately decided by a court on motion for summary judgment. *Rule v. Brine, Inc.* 85 F.3d 1002, 1011 (2d Cir. 1996). The Second Circuit, however, has recognized a very limited exception to this general rule in *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005). In that case, the Second Circuit held that summary judgment may be awarded in the rare circumstance where there is nothing in the record to support the plaintiff's allegations of the defendants' constitutional violations, aside from his own contradictory and incomplete testimony, and even after drawing all inferences in the light most favorable to the plaintiff, the court

---

[15]    Plaintiff testified that he was informed he tested positive for hepatitis C approximately 13 months before he went to Elmira. (Dkt. No. 64, Attach. 10 at 50.)

determines that "no reasonable person" could credit the his testimony.  *Jeffreys*, 426 F.3d at 554-55.

To apply the *Jeffreys* exception, the following three requirements must be met: (1) "the plaintiff must rely 'almost exclusively on his own testimony,'" (2) the plaintiff's "testimony must be 'contradictory or incomplete,'" and (3) the plaintiff's testimony must be contradicted by evidence produced by the defense.  *Benitez v. Ham*, 04-CV-1159, 2009 WL 3486379, at \*20-21 (N.D.N.Y. Oct. 21, 2009) (Mordue, J., adopting Report-Recommendation on clear error review) (quoting *Jeffreys*, 426 F.3d at 554).

The Court finds that all three requirements for application of the *Jeffreys* exception are present here.[16]  In addition, the Court finds persuasive Plaintiff's initial contention, that he was diagnosed with hepatitis C, while incarcerated at Elmira Correctional Facility.  Plaintiff's contention that Defendant Butts ignored the "advice" of the Department of Health to test Plaintiff for hepatitis C is unsupported by the record.  More specifically, Plaintiff testified that he was informed that the results would be in his medical records but that he was merely assuming that someone from the Board of Health told BCCF to check his blood.  (*Id.* at 54-57.)  Even drawing all reasonable inferences in favor of Plaintiff, there is no evidence before the Court that Defendant Butt had access to Plaintiff's medical records from the Department of Health that indicated that he tested positive for hepatitis C.  (*See generally* Dkt. No. 64, Attach. 16 [Plaintiff's Board of Health records which do not mention any hepatitis C screening or results]).

Moreover, the Court notes that there is no evidence that the delay in Plaintiff's treatment for hepatitis C caused sufficiently serious harm such as pain or any other harm from the delay.

---

[16]     There is no evidence that the Department of Health tested for or that Plaintiff's blood test results were positive for hepatitis C.  In fact, the Department of Health records do not mention hepatitis C at all.  (Dkt. No. 64, Attach. 16.)

*Salahuddin*, 467 F.3d at 281.  In fact, the only evidence before the Court regarding any manifestation is that Plaintiff did not exhibit any symptoms of hepatitis C from January 20, 2017, until May 23, 2018.  (Dkt. No. 64, Attach. 13 at 7.)

As a result, Plaintiff has failed to establish that Defendants Butt or Hall were deliberately indifferent to a serious medical condition, and it is recommended that Defendants Butt and Hall's motion for summary judgment on this ground be granted.[17]

### C.    Plaintiff's Retaliation Claim[18]

A cognizable retaliation claim pursuant to 42 U.S.C. § 1983 lies when prison officials take an adverse action against an inmate that is motivated by the inmate's exercise of a

---

[17]    Court is not persuaded Defendants Butt and Hall's argument that "[a]t this juncture, [P]laintiff was obliged to provided more than this unsupported allegation of a verbal communication to substantiate the allegation" (Dkt. No. 64, Attach. 3 at 21) that Defendant Butt was deliberately indifferent to Plaintiff's hepatitis C condition.  *Bellamy v. City of New York*, 914 F.3d 727, 746 (2d Cir. 2019) (reversing and remanding where the district court held that self-serving deposition testimony that is "unsubstantiated by any other direct evidence" cannot raise an issue of material fact.).  However, given the Court's application of the *Jeffreys* exception, this point is moot.

[18]    Defendant Smolinsky asserts that the retaliation claim against him should be dismissed based, *inter alia*, on the doctrine of qualified immunity because "[t]o the extent [] Defendant [Smolinsky] had any involvement, [he] placed the Plaintiff in the medical unit at the direction of a medical professional."  (Dkt. No. 55, Attach. 1 at 10-11.)  Qualified immunity inquiry in a civil rights case generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation"; and (2) "whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation confronted."  *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004), *accord*, *Higazy v. Templeton*, 505 F.3d 161, 169, n.8 (2d Cir. 2007).  "The two are part of the same inquiry," because "a police officer who violates clearly established law necessarily lacks an objectively reasonable belief that his conduct was lawful."  *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 433 n.11 (2d Cir. 2009); *see also Nagle v. Marron*, 663 F.3d 100, 115 (2d Cir. 2011) ("[T]he focus . . . remains on whether, at the time of the alleged conduct, the right was clearly established, rendering it objectively unreasonable for an official to think that his action was lawful.").  Here, Defendant Smolinsky provides no citation in the record to support his assertion that he transferred Plaintiff to the medical unit at the direction of a medical professional.  *But see Cuoco v. Moritsugu*, 222 F.3d 99, 111 (holding that prison officials who were not medical doctors did not have, "the

constitutional right, including the free speech provisions of the First Amendment. *See Friedl v. City of N.Y.*, 210 F.3d 79, 85 (2d Cir. 2000) ("In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws."). As the Second Circuit has repeatedly cautioned, however, because such claims are easily incanted and inmates often attribute adverse action, including the issuance of misbehavior reports, to retaliatory animus, courts must approach such claims "with skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *accord, Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003).

To state a *prima facie* claim pursuant to 42 U.S.C. § 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that (1) the conduct at issue was protected, (2) the defendants took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action–in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274,

---

authority to intervene in an admittedly medical decision."). As a result, the Court is unable to find that the doctrine of qualified immunity is applicable at this juncture.

In addition, because I recommend dismissal of Plaintiff's claim against Defendant Smolinsky, there is no need to consider whether he may also be entitled to qualified immunity. *Armand v. Simonson*, 12-CV-7709, 2016 WL 1257972, at *15 (S.D.N.Y. Mar. 30, 2016) ("[b]ecause the Court dismisses Plaintiff's claim against Peterson, there is no need to consider whether she may also be entitled to qualified immunity."); *see also Posr v. City of New York*, 10-CV-2551, 2013 WL 2419142, at *10, n.8 (S.D.N.Y. June 4, 2013) ("Because [the defendant] did not violate [the] [p]laintiff's [constitutional] rights, there is no need to consider if [the defendant] is entitled to qualified immunity."), *aff'd sub nom. Posr v. Ueberbacher*, 569 F. App'x 32 (2d Cir. 2014).

287 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007); *Garrett v. Reynolds*, No. 99-CV-2065, 2003 WL 22299359, at *4 (N.D.N.Y. Oct. 3, 2003) (Sharpe, M.J.).

If the plaintiff carries this burden, then to avoid liability the defendants must show by a preponderance of the evidence that they would have taken action against the plaintiff "even in the absence of the protected conduct." *Mount Healthy*, 429 U.S. at 287. If taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citations omitted).

Analysis of retaliation claims thus requires careful consideration of the protected activity in which the inmate plaintiff has engaged, the adverse action taken against him or her, and the evidence tending to link the two. When such claims, which are exceedingly case specific, are alleged in only conclusory fashion, and are not supported by evidence establishing the requisite nexus between any protected activity and the adverse action complained of, a defendant is entitled to the entry of summary judgment dismissing plaintiff's retaliation claims. *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

Defendants argue that Plaintiff's retaliation claim fails based on the third element, that there is no evidence in the record to support the contention that Plaintiff was moved to the medical unit in retaliation for his protected speech.[19]

---

[19]    It is undisputed that Plaintiff engaged in constitutionally protected speech by the filing of grievances. (Dkt. No. 55, Attach. 1 at 8; Dkt. No. 64, Attach. 3 at 23-24.) *See also Flood v. Cappelli*, 18-CV-3897, 2019 WL 3778736, at *7 (S.D.N.Y. Aug. 2, 2019) (collecting cases) (holding that the filing of a grievance is protected speech). However, it is not entirely clear whether moving an inmate from the general population to a medical unit may be considered an adverse action. "[T]he Second Circuit and lower courts therein have found that being placed in keeplock or being otherwise confined is indeed an adverse action." *Flood*, 2019 WL 3778736, at *7 (*see Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004) (holding that placing plaintiff in keeplock for three weeks was an adverse action); *Hayes v. Dahkle*, 16-CV-1368, 2018 WL

In considering whether there is a "causal connection between the protected speech and the adverse action, a court may consider a number of factors, including any statements made by the defendant concerning his motivation and the temporal proximity between the protected activity and the defendant's adverse action." *Roseboro v. Gillespie*, 719 F. Supp. 2d 353, 366 (S.D.N.Y. 2011); *see also Tuitt v. Chase*, 11-CV-0776, 2013 WL 877439, at *7 (N.D.N.Y. Jan. 30, 2013) (Dancks, M.J.), *report and recommendation adopted*, 2013 WL 877617 (N.D.N.Y. Mar. 8, 2013) (factors relevant to a consideration of causal connection "include: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his or her motivation"). The Second Circuit has "held that temporal

---

7356343, at *15 (N.D.N.Y. Dec. 11, 2018) (Hummel, M.J.) (assuming that placing plaintiff in keeplock for one day constitutes an adverse action); *Lugo v. Van Orden*, 07-CV-879, 2008 WL 2884925, at *4-5 (S.D.N.Y. July 23, 2008) (assuming that placing plaintiff in keeplock for five days constitutes an adverse action, stating that the holding of *Gill* was not that confinement must have lasted for *weeks*, and pointing out that "less adverse" action such as being moved to a different housing unit have been held to be sufficient to state a claim for retaliation); *Keesh v. Goord*, 04-CV-271, 2007 WL 2903682, at *10 (W.D.N.Y. Oct. 1, 2007) (holding that placing plaintiff in keeplock for one day during which he may have missed meals constituted an adverse action)); *see also Flemming v. Wurzberger*, 322 F. App'x 69, 71-72 (2d Cir. 2009) (holding that the plaintiff's retaliation claim should not have been dismissed where he alleged that he was transferred from the medical unit at Walsh Regional to Upstate Correctional Facility, with limited medical facilities in order to cause him serious harm, in retribution for filing lawsuits); *but see Warren v. Goord*, 99-CV-02696F, 2006 WL 1582385, at *14-15 (W.D.N.Y. May 26, 2006) (dismissing retaliatory transfer claim; finding no adverse action where inmate failed to allege that conditions of his confinement upon transfer from Wende CF's long-term care medical unit to Attica CF's infirmary "significantly differed"); *aff'd*, 2008 WL 5077004 (2d Cir. 2008), *cert. denied*, 558 U.S. 1100). Here, there is evidence in the record that the medical unit—where Plaintiff alleges that he was transferred in retaliation for his grievances—had several fewer privileges than the general population (e.g., no windows, inmates cannot come out of the cell, inmates do not have any of their property with them, limited shower access, limited interaction with other inmates, no televisions and no recreation time). (Dkt. No. 64, Attach. 10 at 95.) As a result, arguably Plaintiff's transfer from B-Pod to A-Pod was an adverse action. However, this issue is not presently before the Court and, in any event, is moot given the finding that there is no evidence in the record to establish that Plaintiff's transfer was for retaliatory purposes.

proximity between protected conduct and an adverse action constitutes circumstantial evidence of retaliation," but has also "consistently required some further evidence of retaliatory animus before permitting a prisoner to proceed to trial on a retaliation claim." *Washington v. Afify*, 681 F. App'x 43, 46 (2d Cir. 2017); *see also Thomas v. Waugh*, 13-CV-0321, 2015 WL 5750945, at *4 (N.D.N.Y. Sept. 30, 2015) (D'Agostino, J. adopting Report-Recommendation on *de novo* review) (citing *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001)) ("temporal proximity alone is insufficient to establish an inference of retaliation.").

Upon review, I find that there is insufficient evidence to establish a material dispute of fact with respect to Plaintiff's retaliation claim. *Washington*, 681 F. App'x at 46.

Plaintiff does not allege the dates during which he was confined to the medical unit (A-Pod)[20] or how soon after he filed his grievances that these transfers took place. "At most, Plaintiff may have intended to rely on temporal proximity between his complaints and his [transfer to the medical unit] to demonstrate a causal connection," however, Plaintiff did not specify when he was transferred to the medical unit, and this prevents the Court from inferring retaliation based on temporal proximity. *Flood*, 2019 WL 3778736, at *8 (citing *Ahmad v. White Plains City Sch. Dist.*, 18-CV-3416, 2019 WL 3202747, at *10 (S.D.N.Y. July 16, 2019) (holding that court could not infer retaliation based on temporal proximity where plaintiff alleged when the adverse action occurred but failed to allege when the protected speech occurred); *see also Feliciano v. City of New York*, 14-CV-6751, 2015 WL 4393163, at *9 (S.D.N.Y. July 15, 2015) (holding that where plaintiff did "not provide the date" he engaged in protected activity, it

---

[20]    While Defendant Smolinsky discusses a transfer for one day to solitary confinement (Dkt. No. 55, Attach. 1 at 6), the record and Plaintiff's allegations appear to relate entirely to transfers to the medical unit, which Plaintiff sometimes refers to as "solitary confinement." (Dkt. No. 64, Attach. 10 at 93 ["I kept getting administratively segregated to the medical unit and I got administratively segregated to A pod."].)

was "impossible for the Court to determine the temporal proximity of the alleged retaliatory acts

to the protected conduct"); *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 412

(S.D.N.Y. 2014) (dismissing retaliation claim where the complaint "fails to state with even a

modicum of specificity when the relevant events occurred")).

After an extensive review of the record, the Court was able to speculate that, despite

Plaintiff's allegation that he was placed in "Admin. Segregation, over five times" (Dkt. No. 45 at

6), he was perhaps transferred to the medical unit on the following six dates: (1) September 22,

2017 (Dkt. No. 55, Attach. 10 at 1; Dkt. No. 61, Attach. 1 at 7; Dkt. No. 64, Attach. 8 at 4); (2)

December 15, 2017 (Dkt. No. 45 at 4); (3) December 19, 2017 (Dkt. No. 62, Attach. 1 at 1; Dkt.

No. 63); (4) January 20, 2018 (Dkt. No. 45 at 5; Dkt. No. 55, Attach. 10 at 1; Dkt. No. 64,

Attach. 8 at 6; Dkt. No. 64, Attach. 10 at 97-98); (5) March 3, 2018 (Dkt. No. 55, Attach. 12);

and (6) April 23, 2018 (Dkt. No. 61 at 3). (*See also* Dkt. No. 64, Attach. 13 at 7 [Def. Butt's

Aff.] ["On select dates, in or about December, 2017 and January, 2018, Mr. Hughes was

maintained in the medical cells (A-Pod) . . ."].) In addition, based on the record, the Court infers

that Plaintiff filed grievances on the following four dates: (1) September 7, 2017 (Dkt. No. 45 at

3; Dkt. No. 55, Attach. 8); (2) September 17, 2017 (Dkt. No. 64, Attach. 8 at 4); (3) December 4,

2017 (Dkt. No. 64, Attach. 8 at 4); and (4) December 22, 2017 (Dkt. No. 45 at 3).

Thus, even assuming that Plaintiff demonstrated temporal proximity between the

grievances that he filed and his transfers to the medical unit, the Court has not been directed to,

nor have I located any other evidence in the record of retaliatory animus by Defendants.[21]

Plaintiff asserted that "Dr. Butt discussed with [Plaintiff] that he had spoke to the jail

---

[21]    As set forth above in Part II.A. of this Report-Recommendation, a district court has no
duty to perform an independent review of the record to find proof of a factual dispute–even if
that non-movant is proceeding *pro se*.

administrator, Mark Smolin[s]ky, and said that the two of them would admin. segregate me in medical 2, which is worse [than] the S.H.U[.]"  (Dkt. No. 64, Attach. 8 at 6; *accord* Dkt. No. 45 at 5.)  Yet, there is no evidence in the record that this statement or the transfers of Plaintiff to the A-Pod were in retaliation for Plaintiff's grievances.

Instead, the record reflects Defendants' legitimate, non-retaliatory reason for transferring Plaintiff to the medical unit, to address Plaintiff's unstable and unmanaged blood sugar levels. (Dkt. No. 55, Attach. 10 at 1-2; Dkt. No. 62, Attach. 1 at 1; Dkt. No. 64, Attach. 13 at 7-8.)  In addition, Plaintiff testified as follows:

> Q:    So when you're in the medical unit then, you wouldn't be sent there for punishment purposes, would you?
>
> A:    I can't say.  I can't say.  I don't know the intent of the person who sent me to the medical unit.  I don't know their intent.
>
> Q:    Okay.  And you were eating snacks and carbs against your doctor's orders around that time, were you?
>
> A:    No.
>
> Q:    But your blood sugar was high; is that right?
>
> A:    Yeah . . .
>
> Q:    . . . So when you were sent to medical so that they could stabilize you given that you are a diabetic, you would be sent to the pod afterwards; is that right?
>
> A:    Correct.

(Dkt. No. 64, Attach. 10 at 98-99.)

In addition, to the extent that Plaintiff's retaliation claim is based on threats to place him in solitary confinement, it is not alleged that any of the Defendants in this case made any threat or were aware of any threats.  *Head v. Ebert*, 16-CV-6546, 2019 WL 1316978, at *6 (W.D.N.Y. Mar. 22, 2019); *Flood*, 2019 WL 3778736, at *8 (dismissing a retaliation claim based on the

First Amendment where there was no connection between the individuals with whom the inmate filed his grievances against and the individuals who retaliated against him).[22]

As a result, Plaintiff has failed to establish that Defendants retaliated against him by transferring him to the medical unit, and it is recommended that Defendants' motions on this ground be granted.

### D.    *Monell* Claim

It is not clear whether Plaintiff's claim against Defendant Smolinsky is against him in his individual or official capacity as jail administrator.  (*See generally* Dkt. No. 45.)  "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985); *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985)).

As set forth in Defendant Smolinsky's memorandum of law, there is no basis for the imposition of *Monell* liability.  (Dkt. No. 55, Attach. 1 at 13.)  In addition, in order to demonstrate municipal liability under *Monell*, the plaintiff is required to show that an individual's conduct amounted to a constitutional violation.  *See Matican v. City of New York*, 524 F.3d 151, 154 (2d Cir. 2008); *Curley v. Vill. of Suffern*, 268 F.3d 65, 70-71 (2d Cir. 2001); *see also Lee v. City of Syracuse*, 446 F. App'x 319, 322 (2d Cir. 2011) ("A jury's finding that no individual committed a constitutional violation precludes municipal liability for that individual's

---

[22]    Plaintiff alleged that he "was being threatened with solitary confi[n]ement, and more." (Dkt. No. 45 at 3, *accord* Dkt. No. 45 at 6.)  However, Plaintiff does not identify who was allegedly threatening him with solitary confinement.

acts.").  In the absence of an underlying constitutional violation, the *Monell* claim fails and must be dismissed.

Here, for the reasons previously discussed, because there was no underlying constitutional violation, municipal liability under *Monell* is foreclosed.  *See Fappiano v. City of New York*, 640 F. App'x 115, 121 (2d Cir. 2016); *see also Bernshtein v. City of New York*, 496 F. App'x 140, 144 (2d Cir. 2012) ("To the extent that [the plaintiff] cannot establish [the defendant] violated her constitutional rights . . . , the City of New York likewise is not liable on the *Monell* claims asserting those violations.").

As a result, to the extent that Plaintiff's claim against Defendant Smolinsky is in his official capacity, I recommend that that claim be dismissed.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motions for summary judgment (Dkt. No. 55; Dkt. No. 64) be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

It is hereby respectfully **ORDERED** that the Clerk of the Court shall file a copy of this Report-Recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[23]

Dated: September 17, 2019
      Binghamton, New York

*Miroslav Lovric*

Miroslav Lovric
U.S. Magistrate Judge

---

[23]    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).